Now, the first case we're going to hear is Jorge Solomon-Membreno v. Holder, and Mr. Yacob, we'll hear from you. Good morning, Your Honors. My name is Ivan Yacob. I represent the petitioners in this case, Jorge and Fatima-Membreno. In this case, Your Honor, we're filing a petition for review of a denied application for asylum from the Board of Immigration Appeals. The claim in this case is very straightforward. Mr. Jorge-Membreno and his sister, Fatima, are brothers and sisters. Fatima was assaulted by the criminal gangs in El Salvador. She may have been raped, she may not have been raped, we're not sure from the record. In any event, when she told her brother what happened, there was a confrontation, a very public confrontation in the neighborhood, and the brother confronted the gangs, the criminal gangs in El Salvador, because of what happened to her. In this public confrontation, Your Honor, the gangs beat up Jorge-Membreno, him and his friends, for about four to five minutes. They were beaten up, they fled. After that, it is believed, but we're not sure, that the gangs committed arson in their house. That fact is really pure speculation. There's no evidence. There's no evidence, Your Honor. We'll concede that from the very beginning. There's no evidence that the gangs committed the arson. It was just, they're speculating that this is what happened. The immigration judge in this case, Your Honor, found that both the family unit was just a well-founded fear of persecution. So we're not really basing this claim on the past persecution that Fatima suffered or Jorge-Membreno suffered. It is just purely a well-founded fear of persecution on account of a membership in a particular social group. The board in the first case, because they went to the board twice, in the first remand, the board said, well, this case is akin to SCG and EAG. They didn't explain why those cases not only govern the case, but govern the result. They didn't explain this. Just send it back to the immigration judge. They'd send it back to the immigration judge for consideration of the political opinion and conviction against torture and petitions. At that point, Jorge and Fatima-Membreno withdrew their political opinion and CAG claim and proceeded only with asylum on account of a membership in a social group. That's really the issue here, isn't it? How we define a particularized social group. That's correct, Your Honor. And the issue more specifically is, well, what is particular? Because the board created a three-part test. There has to be immutability, there has to be social distinction, and there has to be particularity. This court has already decided the first two tests. Immutability, this court decided in Martinez, social distinction was decided in Temu, and now we're here on what is particular. The board tells us, and actually this court actually referred to what is a particular social group, what is particular in nature, and it tells us, well, a group is particular in nature when it has set parameters, there are benchmarks. Can we define this group in any meaningful manner? For example, this court decided approvingly as a circuit decision that says, well, educated cattle ranchers are particular in nature because we know who. Just remind me again what the definition of the particularized group in this case is. Persons who opposed gangs, is that what it is? Well, for the brother's case. The brother's case, let's stick with that for now. The brother's case, a person who publicly opposed the gangs in order to protect the family. So there has to be a public confrontation. He has to publicly oppose the gangs, and there has to be a public confrontation. Those are the two characteristics that makes the social group particular in nature. That is, we know who does not belong to the social group. Anyone who does not publicly confront the gangs is outside of this group. How about the bishop during a service in a church who opposes the gangs publicly, and there may be gangs members in the church? Would that fit in that group? I would argue that it would, but the problem we have right now, Your Honor, is the Board of Immigration and Appeals issued two binding decisions in MEVG and the GR. In MEVG, the board told us that it's going to be on a case-by-case basis on what is particular in nature. Well, it will be, but you still have to have some definitiveness. You have to have what? Benchmarks? You have to have something that can define it. I must say, in thinking of the various hypotheticals that define someone who opposes gangs publicly, that could be pretty loosey-goosey.  And the benchmarks must be someone, for example, in the hypothetical the court gave me, a bishop who publicly opposes the gangs in a sermon. If a social group is mere opposition to the gangs, it seems like, in public opposition to the gangs, it seems that this group would be particular in nature, because we know who's going to be excluded from this group. Anyone who publicly does not oppose the gangs. That is, maybe the sermon-goer who said... So you think the bishop would fall into this particularized social group because he spoke out against the gangs? The bishop would probably fall within this group. How about me? I've written opinions that have spoken out against the MS-13 gangs down in El Salvador. Yes, Your Honor. Am I in that group? And I think anyone, including this court, anyone who publicly opposes the gangs, this group is actually a little bit different than simply... I thought you had limited this group to family members. I thought it was just someone who was a family member who was opposing a group to protect the family. Your Honor, that goes to the sister's case. This doesn't apply to the brother's case. It is, as Judge Nema is postulating, I've got to... You need to answer that question. Does he fit in that class? Because it seems to fit the same way the bishop does. Your Honor, so anyone who publicly confronts the gangs, and that's the group that we created for the brother. Any public confrontation of the gangs falls within this class. I think when the court writes decisions, for example, in Crespin or in Martinez, which there are decisions which publicly oppose the gangs, there's no confrontation. So it would not fall within the group that we created in this case. Now, if the board ever decided that simply public confrontation of the gangs per se, without a public confrontation, it's a social group, I think this court would have to give deference to the board's decision. The board just told us... It's hardly a group. It's almost just everybody. In other words, it doesn't have boundaries. Well, Your Honor, I think it has boundaries. The boundaries are anyone who has not publicly opposed the gangs. I mean, like the immigration judge said in this case, this public confrontation is a very brave act. It's very unique. It's very limiting in nature. I mean, we would have to open asylum to anybody who just stood with the bishop and spoke the way the bishop did. Or you said I'm included. Although I am an American citizen, so I don't need to worry too much. No, no, no. But I think anyone who... If the group is anyone who publicly confronts the gangs, if that's a social group that's created and the board recognizes that social group that's been created, then I don't see what the problem is. Of course, not everyone's going to get asylum. Has the VA ever bought into your definition anywhere? What's your best case for that? Public confrontations. The definition of a group that's defined just by persons who publicly oppose gangs. The VA has initiated a public decision in this case. Every single VA decision so far has been simple opposition to the gangs. That is, gang recruitment, and the VA said, well, that's not going to be enough. Because that's going to be a large section of society. But this case is different from... Yeah, but I thought we, in my hypotheticals with you, we were defining a group that includes maybe the vast majority of society. In other words, I don't know if gangs are the majority in El Salvador. I don't think they are. And I would bet if you had a private poll and you could eliminate the fear of people's voting, there would be a majority that opposed those gangs down there. There would be a majority who opposed the gangs, but there's not going to be a majority, and obviously we're speculating. They've got to speak out publicly, right? They've got to speak out publicly and confront the gangs. And that's what makes this group unique. As the immigration judge noted, I mean, he was a trier of fact. He said, this is unique in nature. Very few individuals belong to this group. Does any circuit court recognize that as a particular type of definition? I haven't seen any cases, Your Honor, from the circuit courts recognizing this social group. What about a family member that goes to a family reunion, and within the family itself there are gang members, but a law-abiding family member says, I don't like what the gang is doing to our country? Your Honor, in that case, there would be a public confrontation of the gangs, and the person would fall within the social group. We don't think that just belonging to the social group, per se, grants a person asylum. The person still has to meet the definition of refugee. Does the person have a welfare? I know, but one of the elements that everybody seems to recognize under this prong is that we have to have a particularized social group that is being persecuted. And that has some meaning, or we end up opening it up to just about anybody. I mean, asylum's a pretty limited function that's given to a particular group of people. If you say it's available to anybody in El Salvador to oppose the gang publicly, we just might as well eliminate the requirements of that. Well, Your Honor, I agree. It must have some meaning. There has to be a benchmark, and that's what the case law tells us. It can't be amorphous. We need to be able to set this group apart from any other member of society. So are we setting apart someone who publicly confronts the gangs? And I think the answer is yes, of course we're setting them apart. Could you define a group as the majority of the persons in El Salvador who are plagued by gangs? Your Honor, we can define a social group on a majority, and I think this Court would have no problem, had this case been in the 1980s during the apartheid regime in South Africa, finding that blacks who were a majority belonged to a particular social group because it is of a particular nature that the white regime back then, the apartheid regime, persecuted these people with that distinction. So we could have a majority of people, and those are the very rare cases, mind you, but we could have the majority of people be a particular social group. What the cases have told us regarding these cases is, it tells us typically it's going to be a discrete section of society. It's not going to be the general population. Of course, in very rare instances... How do we define, make that distinction between discrete and not general? In other words, if you define a characteristic of the whole population or a majority of the population that we're infected by the mafia and we're opposed to the mafia, are we a particularized social group? I think opposition to the mafia per se would not be a particular social group because the VA tells us that it's not. In SEG, it tells us that it must be discrete. It tells us that we must have definable boundaries. In simple opposition, it does not have definable boundaries. Now, what has parameters? This public opposition, the public confrontation against the gangs. That has boundaries, has parameters, because we know who does not belong to this group. That is, anyone who hasn't publicly confronted the gangs falls outside this group, and anyone who hasn't confronted the gangs falls outside the group. And if we take those two characteristics together, we know who falls within this group. It has a very set boundaries, has parameters, and that's what the board tells us. Now, in the recent cases, the board told us, well, we're revamping, well, not revamping, but we're reviewing how the particular social group cases are being done. And in those cases, the board said, we'll be treating these cases on a case-by-case basis. So once the board starts giving us very concrete definitions of what is a particular social group, which it hasn't done in this case, because if we review the board's decision in this case, it tells us, regarding the brother's case, it's distinguished from Crespin because he didn't testify in a criminal case. And regarding the sister's case, and then it goes into... Well, the sister's case can't rise above the brother's case, can it? The sister's a family member. Her participation is derivative of what the brother's situation is. I mean, if the brother is not in a particularized social group, she certainly can't be by being a sister of the brother. Well, Your Honor, in Crespin, this court very specifically said, we're not holding that witnesses in a criminal case are a social group, we're holding that family members of the witnesses in a criminal case are a social group. So this court actually did exactly what this court said. The question that was posed to us is, can someone bootstrap on someone else's actions? In Crespin, that's exactly what happened. But isn't it just what Judge Nima just asked you, that she cannot be in this social group if he's not in the social group? She can be in the social group composed of family members of those who publicly opposed the gangs. But there's only one, only the brother, in one single instance. Well, there's only the brother in that one single instance, but throughout El Salvador, I'm sure there are more people who publicly opposed the gangs. Your Honor, going back to the previous question, is there any circuit law about this case? I'm sorry, there is a circuit law. And we filed a 28-J brief or letter, bureaucro, ninth circuit decision, examining exactly the same social group that we're proposing here. So it is indistinguishable, that case, from our case. It is someone who publicly confronted the gangs, and the ninth circuit held, it remanded the case back to the board, but the ninth circuit, had the ninth circuit thought this group is not particular in nature, then there would be no need for a remand, it would just have denied the petition for review. So the ninth circuit seems to have recognized that this public confrontation is a particular social group, and has set forth in bureaucro. Your distinction from our decision in Zelaya, is the word public, I take it? It is the word public. Also in Zelaya, Your Honor, the difference is, there the person, the social group that was composed, is someone who filed two police reports, and the police took no action on it. And that is an important distinction in this case. Because had the police taken action, had this been a public confrontation with the gangs, I think this court would have found, would have held otherwise. But in this case, there was a public confrontation. But part of it is in Zelaya, he refused to join the gangs. He refused to join the gangs. Wasn't that public? I'm sorry, Your Honor, I'm out of time. Please answer, yeah. Wasn't that a public? I mean, is this public getting beat up by them? He refused to join the gangs, Your Honor, and he filed two police reports, and the police refused to take any actions on the police report. So there was no public confrontation with the gangs. In fact, it's unknown in that case whether the gangs even knew that he filed these police reports. What's interesting in Zelaya, Your Honor, is in that case, the person said, well, this case is exactly as Crespin, where the court said that being a witness in a criminal case is a social group. And this court said, no, no, no, you misunderstood Crespin. Crespin's not about being a witness in a criminal case. Crespin is about being a family member of a witness in a criminal case. And when the board decides this case, it's a one, you know, the board tells us the sole reason why this case is different from Crespin is because of the same argument that Zelaya presented to this court, and this court rejected. Okay. Thank you, Mr. Yacob. You have a short rebuttal. We'll see you back. Ms. Murcia. Good morning, Your Honors. May it please the court, Lisa S. Murcia of the Office of Immigration Litigation, for the respondent. There's one primary issue before the court today, whether the board's conclusions that the petitioner's proposed particular social groups are not sufficiently particular or socially distinct to be cognizable under the INA are manifestly contrary to the law of the board's precedent and this court's precedent pertaining to particular social groups. Specifically, the petitioners proposed two social groups. The first social group of the male petitioner, Mr. Solomon Membreno, is young Salvadoran students who expressly oppose gang practices and values and wish to protect their family against such practices. The second social group proposed by the female petitioner, Ms. Villanueva Membreno, is young female students who are related to an individual who opposes gang practices and values. The respondent argues that the petitioners have failed to establish that the board erred in concluding that their proposed social groups are not particular social groups under the INA. As Your Honors pointed out, Mr. Solomon Membreno's proposed social group doesn't fit the board's definition of particularity as articulated in matter of SEG and matter of EAG. What's your best circuit court case for your position? Well, this court's circuit court cases in Lozama and Zelaya are particularly relevant to this case. I mean, in both those cases, the court decided the issue on particularity grounds and it decided that opposition to gangs, which is essentially what is at issue in this case, that opposition to gangs were not... that someone who was alleging opposition to gangs couldn't show particularity because there was no unifying relationship or characteristic to narrow this diverse and disconnected group. ...public nature of the opposition. In other words, they just... not only do they oppose it, but they've done something expressly, either by testifying, filing a police report, or some kind of, as in this case, confrontation with the gang itself. Well, as Your Honors pointed out, that doesn't narrow the group at all. In fact, it almost expands it. In some ways, the petitioner's proposed group is larger than the ones that were being proposed in front of Zelaya and Lozama because resistance to gang recruitment in and of itself is an express opposition to a gang. It's a public opposition to a gang. They asked him if they would join a gang. They said no. Here, it's the same difference. It is an opposition to a gang that was happening in public. And that... and in fact, interestingly enough, in Zelaya, part of the particular social group was that the alien in that case had notified the authorities of the gang's harassment, which in and of itself is a public act. They went and they filed a police report. And this court specifically rejected that that would fulfill the particular requirement, the particularity requirement, that that would... that would differentiate his opposition from any other opposition. They said that opposition to gangs was an amorphous characteristic, and resisting gang recruitment was similarly amorphous. And in this particular case, public opposition, which could be anything, is similarly amorphous. How is this different than agreeing to testify against a gang? I'm sorry? How is this different than agreeing to testify against a gang? Well, in some ways, it's... Any sort of public act could essentially fit this definition. But if one was... if one was proposing a particular social group of someone who was a witness, that's a different issue. Whether or not that particular proposed social group would fit under the definition would be something that the board would have to examine. But in this case, the group that he's proposing is so expansive that it can include people who resist gang recruitment, which is why the board... excuse me, the board rejected the particular social group in this case. And it simply doesn't fit the particularity requirement. And on that basis alone, this court can reject the proposed particular social group of the petitioner. The other side seems to be relying heavily on this recent Ninth Circuit case that they submitted as additional authorities. And in answer to Judge Conrad's question, how does this differ from testifying, the difference, it seems as though they're arguing that Zelaya and others didn't have that taking the concrete steps language from the Ninth Circuit case. In this instance, I guess the concrete step would be publicly doing that. In Zelaya, it was simply reporting it to the police. And the question is, is that taking concrete steps that would fit within the Ninth Circuit's definition? I don't know. But the distinction here being someone who goes out and confronts them out in public and puts themselves in a position of danger, particularly after they beat them up, and you can only imagine what's going to happen thereafter. So is that a basis for distinguishing our cases here that those earlier cases did not deal with specific concrete steps that were publicly made that would indicate there is this danger that could allow them to be classified as a social group? Well, Your Honors, I think there are two points to be made. Obviously, that's a Ninth Circuit case, and this Court is not held by that. But the second and most important distinction is that Peer Bok doesn't actually address the particularity issue. They mention it, but they don't address it. Their remand is actually on the social distinction. It's a new term. I'm getting used to it. Social distinction issue. Their remand is on that issue alone. And in that case, they decide it basically on the basis of the facts of that case, that they say that there was evidence there that he could possibly fulfill the social distinction issue. They don't actually address particularity. And this Court in Zelaya and Lozama has addressed particularity. And they have essentially rejected this type of social group, which is certainly in analogous circumstances, they have rejected this type of particular social group, which is amorphous, all-encompassing, and would simply include anybody, anywhere, who simply stood up and said something against the gangs. As Your Honors pointed out, a bishop in a church. As Zelaya pointed out, someone who would file a police report. Simply saying that it's the particular social group here, which is expressly encompasses so many actions that it is the definition of amorphous. The petitioner tries to distinguish his particular social group on the concept of expressly. Actually, the respondent would argue simply actually expands the particular social group even beyond the ones that were proposed in matter of SEG and matter of EJ that the Board rejected on the grounds of particularity. The word particular is a difficult phrase. I sort of wonder where it leads us just to be focusing like this. For instance, Mr. Jorge, in this case, could be saying anybody who opposes a gang in the public square, gets in a fight for five minutes, and then flees for a fear of his life is a particular group. What would be wrong with that? In other words, he particularizes to the facts of this case in that anybody who is in that circumstance, and there may be others, but he certainly is within that circumstance, that's fairly particular because I added all these details. How do we address that kind of problem? That's obviously a little bit of an absurd problem. I think Mr. Iacobo probably agreed to, but maybe not. Your Honor, that actually gets to the heart of what's at issue in this case. A petitioner can't simply define himself as a particular social group as one, which is what the petitioners are trying to do that today. There may have been a couple of others across the country that did the same thing. That's not a hypothetical, obviously. Well, I understand you're hypothetical, but in trying to define a particular social group of one, what the petitioners ignore, essentially, is the word group in particular social group. You're not simply trying to define... What if I pull back and take away some of my adjectives so that I increase the size of the group? And I think that actually is the proposal in this case. It's public, it's confrontational, opposing a gang. That was, I think, where he would define the proposed group. I still recognize that that includes maybe the bishop, but he says so be it. But he says it's particularized, and you say it's amorphous, I guess. I don't know what the opposite of particularized is. Well, if I could refer to the board's recent decisions, they discuss particularity in detail in some ways. And you would give me one second. When they're discussing particularity, they say that it essentially emphasizes a different part of society, that it tries to define outer limits to a group. When one is discussing amorphousness, in this particular case, the problem is that there is no outer limits. As Your Honor pointed out, we can keep on proposing people. In other words, why couldn't they define all of society in a particular way? And I was trying to get this hypothetical to Mr. Yacob when he was arguing here. What if all of the citizens of El Salvador who are not members of the gang but expressed opposition to the gang, why isn't that a particular group? It's large, but it's particular. The board's recent decision, when it was talking about particularity, it actually talked about the recognition within the society of this group, which in some ways goes to both particularity and social distinction, that the society itself cannot be the group, but the society can recognize a group. So particularity was essentially defined... Your Honor, give me one second. When they're talking about these groups, they... Sorry, wrong page. They essentially say a particular social group must be defined by characteristics that provide a clear benchmark for determining who falls within the particular social group. It is critical that the terms used to describe the group have commonly accepted definitions in the society of which the group is part. So in some ways, it's about a distinct group within the society. So it's not so expansive that it would include everyone. It has to be recognized... It has to be a recognized group within society. In some ways, this Court's recent decision, Temo, sort of recognizes that. In that Court decision, the Court... But it was discussing whether the Board erred rejecting the particular social group of individuals with bipolar disorder who exhibit erratic behavior. And this Court went through the analysis when it was saying that... Where it found that the Board erred because it didn't... It didn't recognize that the group was recognized within society as a very distinct group. So in this case, when one is discussing amorphousness, essentially, that there's no outer limits to a group, it's because that almost any person could fit under the definition of the proposed particular social group definition that the petitioner is proposing, that there's absolutely no outer limits to it. That, you know, if you said someone who opposes gangs in society in El Salvador, that isn't something where the society could immediately say, oh, that would be limited to this group of people, necessarily. So in this particular case, there is no particularity on that basis. But it's more than just opposed. It's public. It's confronting them in public as being beaten and dealing with a gang in which there's been some other interaction. He's not just going out just to oppose them. He's opposing them for a reason, family member, and the fact that he believes his sister's been raped. Your Honor... I'm sorry. When you start talking about testifying, if you take the concrete step of going and testify, you end. I mean, shouldn't there be something else that can happen that would allow it to be some type of concrete step that would allow it to be a social group beyond just mere opposition? Well, Your Honor is talking about mere opposition here. There is no additional step in some ways because when he says publicly confront, it encompasses almost any action. And I should add his actual definition is expressly. It's not actually publicly. While publicly could be included in expressly, it is expressly opposed gangs here. And that simply could encompass any action. That's the definition of amorphous, that you can't limit that action, that there is no outer limit to that action, that there is no recognition of that action. And in doing so, the step that you undertake puts your own life at peril. I'm sorry, Your Honor? In other words, by confronting this gang, this particular individual put himself in a very dangerous situation. He could have been killed. He could have been... He was beaten. Is that not a sufficient means by which you can limit this so-called opposition? I mean, it's one thing to yell from your car window, I oppose you guys out here, as opposed to getting out of your car, walking over to them and directly opposing them for a specific reason because of family and saying, hey, you know, taking them on, so to speak. Well, as Lizama and Zelaya recognized, the problem is that when you're defining that as a particular social group, you're not limiting your forms of opposition to the gang. There's no limit to persons who oppose gangs or even how they oppose it or any... There's no limitation or outer limit to that, simply because in this particular case that we can say that he took these particular actions, that doesn't mean that there is a particular social group where he is essentially proposing, again, a particular social group of one. If the difference in testifying, testifying against a gang puts your family and the person testifying in danger and it sort of puts them in a particular group, testifying seems to be, you know, at least a little bit more sanitized than walking out in the street and directly confronting them. That is... that's a real threat right there. I mean, the testifying in and of itself is something you perceive is going to happen. You're going to get it for having testified against them, and so you're in a different group. But to walk out in front and you're talking about... You say it's one, but this one is... It would mean anybody who does this, who would walk out in front of a group and confront them directly, putting themselves in danger and peril. Well, as the board pointed out in matter of SCG matter at EHE, the problem is that you couldn't actually differentiate that person from the other people in society. Everybody is in danger from the gangs there. But I don't want to talk about those people who walk out in front of the gang. It's limited in that manner. I'm not talking about other people who just want to oppose, they write about it, they talk about it in the church, or they speak against it. I'm talking about those who walk out in the street and directly confront them and put themselves in peril, much as the person who walked in a courtroom and testified. Well, again, the court's reasoning in Zelaya's is applicable here. The court said that filing a police report added little to the particularity equation in the face of the common-sense proposition that MS-13 would look unfavorably upon anyone who complained about its harassment tactics to the police. And we have that case. But he did not walk out in front of the gang. He walked into the police station. He didn't file his report. He didn't take a report to the police, to the gang. He went to the police. He went in a safe sort of spot and gave a report. Now, I do find it difficult to differentiate that from actually testifying in a trial, but we're stuck with it, so we have that. But... Well, SEG is somebody who opposed recruitment and resisted the gang. Well, as Your Honor just pointed out, I mean, as I was saying, in these cases... You said, as Your Honor just pointed out. Well, in the matter of SEG and in Celaya... He walked out in front of a gang and confronted the gang? No, but... That's what I'm talking about. Well, Your Honor, but the difference in these... I mean, there is no difference in that opposition, though. That's the salient point of the board. I'm sorry, I'm actually out of time. Just go back to Judge Conrad's initial question. Tell me what that testifying does. What is it that makes... We've got to make some sense out of these cases. There ought to be some consistency of how we do this. What is that doing? I mean, I guess everybody knows if you testify against someone, that probably... Yeah, that puts you in some serious peril. You know you could get it for that. But I'm just having a hard time understanding why walking out in front of that gang and confronting them directly isn't even more so putting yourself in a situation. It's... What you hear is the particularity of that opposition. And the fact is that anybody who opposes a gang, whether they do it in public, whether they file a police report, any type of express opposition to the gang, that encompasses so many actions that it is amorphous. There's no outer limit to it. I want to make sure, if you're seeing this, you're saying you cannot say only those who walk in front of the gang, that anytime you just say that, it's anybody. Well, Your Honor is proposing a different social group than what is being proposed here, is, I suppose, what we're trying to get at and perhaps where we're passing in the night, as they say. The proposed social group of the petitioner is anybody who expressly opposes gangs. Your Honor is giving a specific instance in that rubric. You're saying that in this particular example, this is how this person expressly opposed gangs. But that is, as I've been saying, that is essentially why this group is so amorphous, because it encompasses all of these actions, that one can expressly or publicly confront a gang by walking out into the street and confronting a gang member. Someone can do it by being a bishop in a church and speaking out in front of people. Or you can be a witness in a public trial. He gives no limitation as to the outer limits of this particular social group, which is what the Board was getting at in its definition of particularity. That amorphousness... The Board's best definition in SEG? Well, Your Honor, I would say its definition is articulated in a matter of SEG. And certainly in its... It's the most particularized definition of particular. I mean, it recited again in a WGR, whatever the initials are, but they talked somewhat extensively about the notion that opposing and resisting gangs was amorphous in defining the group. It didn't have the benchmarks, and consequently it was the Board's position that that was not a particularized social group. Well, certainly it's one of the decisions that speak to it the most. Okay, thank you very much. Thank you, Your Honors. Thank you. Thank you, Your Honor. There are a couple of distinctions between Celaya and this case. In Celaya, the person filed a police report, and the police refused to take any actions in the police report. What makes this case not one that she characterizes as an amorphous situation in which anybody who opposes is going to be included? And that little particular example I gave, she says I'm giving a case that's not quite yours, and that is the confrontation in public directly with it, that you simply are saying public expression. So what makes that public expression, and she may be right on that, if all you're talking about is someone who expresses opposition, that was your answer to Judge Niemeyer, then that does sound a bit amorphous. But if you're talking about someone who directly, as the Ninth Circuit say, take concrete steps, walk out in the crowd, stand in front of them, and if it can be so defined, it may not be a group that can be so defined. It may just be a group of one, which is not a group. Right, exactly, Your Honor. So I think in this case, the social group we created, it's not simply public announcement against the gangs. It is publicly expressing the gangs, taking concrete steps, opposing the gangs. Now, where is that? I think we ought to not get too amorphous here. What is the proposed gang that was presented to the board, the particular proposal of? The proposed social group. Yeah, social group. It sounded to me like it had a different definition than you're articulating here in the courtroom. It's young Salvadorians who publicly expressed opposition to the gangs and confronted the gangs in order to protect their families. That is a social group that was created. Now, a social group cannot be a social group of one. For example, we can't say, we're going to create a social group composed of, and its members are Jorge, Salvador, and Lorena. You also can't create one that includes so many other hypotheticals. I mean, SEG explains that. They say you even have to look to the size and the particular, whether society immediately recognizes the scope of the group. Right. And when you define a group that includes the bishop and includes me and includes anybody else who may have opposed publicly the group, the hypotheticals are so great, you can't say what is that group, and society won't recognize it. Right. Well, Your Honor, when we talk about whether society recognizes a group, we're talking about social distinction. I understand, but it still has to be something, the particular has to be something that's societally perceived. Right. It has to have some boundaries, and the boundaries in this case are the confrontation... It says here in SEG, it has to be described in a manner sufficiently distinct that the group would be recognized in the society in question as a discrete class of person. Right. So that is a pretty, I'm reading from SEG, and that's a pretty decent definition to provide us with some guideposts. Is this a group of persons, a discrete group of persons that would be recognized in the society in which we're talking about? Right. I'm out of time, but... Oh, answer, sure. So the way we see this case, Your Honor, is the larger the group, the more, I guess, when it reaches the outer limits of the group, the more amorphous the group starts to become, it goes to the issue of, well, how fearful is the person truly... How truly fearful is the person? For example... Fearfulness doesn't have anything to do with it. Well, Your Honor, I'll give you one very quick example. We were talking about apartheid before. If we say, well, anyone who is black during the apartheid regime is a social group, we can narrow this group and say anyone who was a militant with Nelson Mandela, well, those people will certainly have a more intense fear than simply anyone in the apartheid regime. Except for this particular aspect, it doesn't matter about the intensity of the fear. The question is a particularized social group recognized by the society as a discrete group of persons that you can... and not amorphous. And so it seems to me the scope of hypotheticals within the group would be more important than the nature of fear. Basically, we're describing a group of which somebody particular participates. And Congress left us with a pretty loose thing, but we do have SEG and we do have our decision in Zelaya, which seems to be running in the same vein. I may be wrong on that, but I don't know if Zelaya reads just as closely to SEG, but SEG does give a fairly detailed description of what a particular means. And, of course, the board recited it again in that later case. In MEVG, the board recited the SEG requirements, but we're not challenging whether SEG was correctly decided in this case. We're just applying the facts to SEG. Okay, well, we'll wrestle with this. You've left us with a good question. Thank you, Your Honor. We'll come down and greet counsel and then proceed on to...
judges: Paul V. Niemeyer, James A. Wynn, Jr., Robert J. Conrad, Jr.